IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAUK COUNTY,

                                                    OPINION AND ORDER

              Plaintiff,

                                                    07-cv-543-bbc

        v.

UNITED STATES DEPARTMENT
OF THE INTERIOR and
DIRK KEMPTHORNE and
HO-CHUNK NATION,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Raising questions about the legality of the Indian Reform Act of 1934, 25 U.S.C. § 465, and other matters, plaintiff Sauk County seeks review of a final action taken by the United States Department of the Interior under the Act. The department took into trust for defendant Ho-Chunk Nation approximately five acres of land located in Sauk County, Wisconsin. Plaintiff contends that the department's action was arbitrary and capricious, that the Indian Reorganization Act is unconstitutional and that the department wrongly denied plaintiff standing to challenge the finding that the action would have no significant impact under the National Environmental Policy Act. The matter is now before the court

1

on the department's motion to dismiss or in the alternative for summary judgment. Because the pending motions require factual inquiry into the record below, I treat them as motions for summary judgment. I conclude that plaintiff cannot succeed on any of its contentions and that the department's decision should be affirmed. From the administrative record, dkt #25, I find the following relevant facts.

RECORD FACTS

Sauk County is a political subdivison of the State of Wisconsin. Defendant United States Department of the Interior exercises authority over Indian affairs; defendant Dirk Kempthorne is Secretary of the Department; defendant Ho-Chunk Nation is a federally recognized Indian tribe with 6000 enrolled members.

Historically, the tribe occupied millions of acres in northern Illinois and southern Wisconsin; at present it occupies 2100 acres of tribal trust land, some of which is located in Sauk County. In 1995, the Nation asked the Bureau of Indian Affairs to take into trust fourteen parcels of land comprising approximately 725 acres. Later, it withdrew the request and filed a new application, seeking to have accepted into trust a single, five-acre parcel (parcel 7 of the original application) located directly across U.S. Highway 12 from the Nation's Ho-Chunk Casino in Sauk County.

In 1997, the Bureau of Indian Affairs Great Lakes Agency superintendent advised plaintiff of the application and solicited its comments. Plaintiff opposed the application. In 2000, the superintendent prepared an environmental assessment and a draft finding of no significant impact, in accordance with the requirements of the National Environmental Policy Act, and invited interested parties to comment on the draft. The Nation provided a written response to the effect that parcel 7 was used for housing and community services and that the Nation did not intend a change in use. On December 6, 2001, a final finding of no significant impact was issued, with the following analysis:

> The acquisition of [parcel 7] does not include any development o[r] construction, and no change in land-use is associated with the proposed acquisition. Impacts of the proposed acquisition include the loss of property taxes paid on the subject parcel as well as the transfer of zoning authority to the Ho-Chunk Nation.

The superintendent concluded that in the absence of any change in use there was no environmental impact.

On March 13, 2003, the superintendent approved acceptance of parcel 7 in trust for the Nation. Plaintiff appealed the superintendent's decision to the Bureau of Indian Affairs Midwest regional director, who upheld the decision of the superintendent on January 27, 2005.

Plaintiff appealed the director's decision to the Interior Board of Indian Appeals unsuccessfully. In reviewing the director's decision, the appeals board gave detailed consideration to the director's analysis on each of the eight criteria set forth in 25 C.F.R. § 151.10. In addition, the board found that plaintiff lacked standing to challenge the finding of no significant impact.

OPINION

The present appeal raises three issues: (1) whether the Department of the Interior's decision to take parcel 7 into trust was arbitrary and capricious; (2) whether Congress acted constitutionally when it passed the Indian Reorganization Act, which authorizes taking land into trust; and (3) whether plaintiff was improperly denied standing to challenge the department's finding that taking the land into trust would have no significant environmental impact.

A. Administrative Procedure Act Review

Plaintiff's appeal arises under the Administrative Procedure Act, 5 U.S.C. § 701-706. At the outset, plaintiff contends that the decision should be set aside because it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

4

> To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)(internal citations omitted).

Defendant has adopted regulations, 25 C.F.R. § 151.10, setting forth criteria by which it assesses the propriety of accepting land into trust when the land is located withing or contiguous to an Indian reservation, and the acquisition is not mandated. For the purpose of this opinion, subsections (b) and (e) are relevant.

> (b) The need of the individual Indian or the tribe for additional land;
>
> (e) If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls;

In considering the need for the land, the superintendent made the following determination after considering the submission of interested parties:

> It is the Nation's long term goal to have a sufficient land base on which to provide educational, social, and cultural opportunities for its members, and to protect the lands from tax forfeiture, sale or foreclosure. Currently, the Nation does not

5

> have sufficient lands to provide these basis human needs. Trust acquisition of this parcel is consistent with these goals and would ensure that this land would be held for the Nation by the Federal Government for future generations. Further it will promote tribal self-governance and self-determination.

March 13, 2003 decision at p. 2, AR 1462. In light of the undisputed facts in the record, this finding is reasonable. The five-acre parcel, which the tribe holds in fee, contains a residence and an outbuilding that are used to provide tribal housing and community services to tribal members. It was reasonable for the superintendent to accept the Nation's representation that it intended to continue using the land for these purposes after acceptance into trust. There is also evidence in the record that a need exists for additional housing and that parcel 7, located adjacent to the Ho-Chunk casino, could be used to house tribal casino employees. See 45 IBIA 212, AR 14; July 7, 1997 letter, AR 228. Beyond the specific need for housing, it was reasonable for defendants to conclude that given the Nation's limited land base, acquisition of this small additional parcel would further long-term tribal stability. The superintendent's determination that the Nation has sufficient need for parcel 7 was reasonable, adequately supported by the record and not arbitrary and capricious.

Plaintiff's second challenge is that the department failed to give adequate consideration to the impact on plaintiff resulting from removing the parcel from county tax rolls. It is undisputed that annual county property taxes on parcel 7 have ranged from

6

$1,091 in 1996 to $2,645 in 2005. In assessing the impact, the superintendent used a figure of $27,000,000 as the positive economic impact of tribal activities on Sauk County. Plaintiff challenges the $27,000,000 figure as excessive and unsupported. Even if plaintiff is correct, it is evident that the positive economic impact of the Nation's financial contributions dwarfs the property tax receipts attributable to parcel 7.

In a related argument, plaintiff contends that "the BIA ignored the fact that the Ho-Chunk Nation will be looking to acquire more land into trust in the future, and focused squarely on the five acres applied for." Plaintiff argues that a checkerboard effect of small non-contiguous parcels will have an adverse effect on the county. The argument is unpersuasive for two reasons. First, it is entirely reasonable for defendants to focus on the parcel at issue rather than speculating on the possibility of future requests. It seems unlikely that the Nation could acquire substantial land base in five-acre increments: the process of acquiring parcel 7 has taken more than ten years, without accounting for potential further appeal. Second, Parcel 7 is contiguous to existing Ho-Chunk casino trust land and presents no patchwork effect. It was reasonable for defendants to determine that the impact on plaintiff from removing parcel 7 did not weigh significantly against taking the land into trust.

Overall, I conclude that defendants acted reasonably and not arbitrarily or capriciously in reaching the determination it did after considering the 25 C.F.R. § 151.10 factors.

B.  Constitutionality of Indian Reorganization Act

Plaintiff's challenge to the unconstitutionality of the Indian Reorganization Act, 42 U.S.C. §§ 4321-7788, consists of a brief discussion of what it terms "not such a farfetched scenario" in which the department acquires the entire United States in trust, "effectively ending the sovereignty of the states," and an additional scenario in which the department takes Chicago in trust for the Ho-Chunk Nation.  From this argument and plaintiff's citation to South Dakota v. United States Dept. of Interior, 69 F.3d 878 (8th Cir. 1995), vacated, 106 F.3d 247, 881 (8th Cir. 1996)), I infer that plaintiff is asserting that the Act unconstitutionally delegates legislative power to an administrative agency without laying down "an intelligible principal to which [the agency] authorized to [act] is directed to conform."  J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928).

The constitutionality of the Indian Reorganization Act and the authority of the Department of the Interior to take land into trust under the Act have been affirmed by every circuit court of appeals to consider the issue.  The courts have been unanimous in rejecting plaintiff's arguments.  Carcieri v. Kempthorne, 497 F.3d 15, 43 (1st Cir. 2007); South Dakota v. United States Dept. of Interior, 423 F.3d 790, 798-99 (8th Cir. 2007); Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 974 (10th Cir. 2005).

8

After a searching review of the statute and its legislative history in <u>South Dakota</u>, 423 F.3d at 799, the Eighth Circuit upheld the Act against a nondelegation doctrine challenge:

> [A]n intelligible principle exists in the statutory phrase "for the purposes of providing lands for Indians" when it is viewed in the statutory and historical context of the IRA. The statutory aims of providing lands sufficient to enable Indians to achieve self-support and ameliorating the damage resulting from the prior allotment policy sufficiently narrow the discretionary authority granted to the Department.

This reasoning is echoed in the decisions of the First and Tenth Circuits. I find the decisions persuasive. The Indian Reorganization Act's delegation of authority to the Department of the Interior to take land into trust for Indians is constitutional.

In a separate argument, plaintiff contends that taking parcel 7 into trust is precluded because it was part of land originally ceded to the United States in a treaty. Plaintiff provides no legal support or argument for this proposition. Section 465 of the Act contains no such limitation. Indeed, Congress must surely have anticipated that some of the land taken into trust would have previously been ceded to the United States by treaty, because one of its goals was to allow tribes to reacquire parts of former tribal domains. See <u>Cohen's Handbook of Federal Indian Law</u>, § 1.05 at p. 86 (Nell Jessup Newton, ed. 2005).

C.  National Environmental Policy Act Standing

Because trust takings are subject to the National Environmental Policy Act, the regional director conducted an environmental assessment and determined that no significant impact would result from taking the land into trust.  The superintendent accepted the representations of the Nation that there was no intent to change the current use of the property and therefore no environmental impact and no need to prepare an environmental impact statement.  The Interior Board of Indian Appeals held that plaintiff lacked standing to challenge the decision not to prepare an environmental impact statement because it had asserted no adverse effect that fell within the zone of interests protected by the National Environmental Protection Act.  I agree that plaintiff lacks a sufficient environmental interest to sustain standing .

To establish standing, a plaintiff must have suffered a concrete and particularized injury that is either actual or imminent, that the  injury is traceable to the challenged action of the defendant and that is likely that the injury will be redressed by a favorable decision. Massachusetts v. EPA,127 S. Ct. 1438, 1453 (2007) (citing Lujan v. Defenders of Wildlife, 504  U.S. 555, 560- 61 (1992)).  Furthermore, the alleged injury must be within the zone of interests sought to be protected by NEPA procedures.  Lujan v. National Wildlife Federation, 497 U.S. 871, 883 (1990).  As the Board of Indian Appeals noted, purely economic injury is not within the zone of interests protected by NEPA and cannot sustain

standing. Plaintiff's only alleged injury that might arguably fall within the zone of interests to be protected, cumulative development pressure, is so wildly hypothetical that it cannot sustain standing.

Plaintiff hinges its potential environmental injury on its loss of regulatory power over parcel 7 that will result from its being taken into trust. However, plaintiff does not suggest that Parcel 7 itself will be used in a way that has an adverse environmental impact on Sauk County or its residents. Rather, it makes the following series of speculations: (1) the Nation has misrepresented its plans for the future use of the property; (2) the Nation will apply to have other land taken into trust; (3) the Nation will increase commercial development on Parcel 7 and other hypothetical future trust parcels; and (4) this commercial development might lead to more regional development and habitat destruction in the nearby environmentally sensitive Baraboo Range.

The links in this chain of suppositions are too numerous and the links themselves too weak to satisfy standing requirements. A potential injury must be imminent and traceable to the decision to take land into trust. Plaintiff has shown no basis for assuming that the Nation will develop parcel 7 commercially, contrary to its express representation. Moreover, even if it is commercially developed, plaintiff has not shown that such development would pose any environmental concerns. Although it is appropriate to consider the cumulative environmental effect of a sequence of actions, the possibility that other parcels will be taken

11

into trust is mere speculation. If and when the Nation files additional applications for trust taking, plaintiff will have an opportunity to argue that the applications will have a cumulative effect.

In summary, it is apparent that defendant Department of the Interior was correct to conclude that plaintiff is under no imminent threat of environmental injury from the decision to take parcel 7 into trust and therefore lacks standing to challenge the decision that preparation of an environmental impact statement was not warranted by the circumstances.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, docket #22, is GRANTED. The clerk of court is directed to enter judgment dismissing plaintiff's complaint with prejudice.

Entered this 29th day of May, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge